IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER KOUKOS, *et al.*,

    *Plaintiffs,*

v.

CHESTER COUNTY, *et al.*,

    *Defendants.*

CIVIL ACTION
NO. 16-4602

**PAPPERT, J.**     February 7, 2017

### MEMORANDUM

    Plaintiff Christopher Koukos, a former Chester County Prison inmate, sued the County, PrimeCare Medical Inc., Prison Warden D. Edward McFadden, Prison Deputy Warden of Treatment Ronald M. Phillips, Medical Assistant Jenice Abney, Nurses Amanda Hines and Samantha Budynkiewcz, Medical John Does 1–10[1] and Correctional John Does 1–7,[2] alleging, *inter alia*, that Defendants provided him with inadequate medical care during his incarceration. Count III of Koukos's amended complaint alleges "state law negligence" because of the insufficiency of this care. Defendants Abney, Hines, Budynkiewcz and PrimeCare filed a motion for partial judgment on the pleadings, contending that the negligence claims are barred due to Koukos's failure to file the certificate of merit required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure. For the following reasons, the Court grants the motion.

---

[1]     Medical John Does 1-10 are yet unidentified medical professionals employed by PrimeCare assigned to provide medical services at Chester County Prison. (Pls.' Am. Compl. ¶ 10.)

[2]     Likewise, Correctional John Does 1-10 are unidentified correctional officers or supervisors employed by Chester County to work at CCP. (*Id.* ¶ 13.)

1

I.

Prior to his incarceration, Koukos was being treated for various medical conditions for which he was prescribed several medications, some of which were opiate-based. (*Id.* ¶¶ 18–19.) Upon his arrival at Chester County Prison ("CCP") on August 20, 2014, he had an intake examination with Jenice Abney, a medical assistant employed by PrimeCare, the private company that provides medical care to CCP inmates. At that time, Koukos requested that he be permitted to take a dose of his next scheduled medication, an opiate, because he had already missed one dose. (*Id.* ¶ 23.) According to Koukos, Abney informed him that the medications he had brought into the prison would be destroyed and that she would be unable to provide him any of his prescribed medications. (*Id.*) Abney noted in prison records that Koukos was at risk for opiate and benzodiazepine withdrawal and that he had a heart condition. (*Id.* ¶ 24.) She also noted that for medical reasons, Koukos should be assigned to a bottom bunk. (*Id.*) Amanda Hines, a licensed practical nurse employed by PrimeCare, reviewed Abney's notes prior to the conclusion of the examination and was therefore also aware of Koukos's medical needs. (*Id.* ¶ 25.) Neither Abney nor Hines, however informed Koukos of his "right" to a bottom bunk assignment or took any actions to ensure that he would thereafter be monitored or evaluated while undergoing opiate and benzodiazepine detoxification. (*Id.* ¶¶ 24, 25, 27.) Two correctional officers subsequently assigned him to a top bunk.

That evening, as a result of having not taken his medications, Koukos began to experience symptoms of opiate and benzodiazepine withdrawal, including prolonged spasms, shaking and profuse sweating. (*Id.* ¶ 28.) Koukos alleges that he alerted a correctional officer that he had not received his proper medication and was feeling ill and requested medical attention but that his request was denied. (*Id.* ¶ 30.) The following day, Koukos's symptoms

worsened, exacerbating his heart condition and causing him to shake and sweat uncontrollably. (*Id.* ¶¶ 32–37.) He contends that he appealed to several correctional officers and submitted numerous medical request slips in an effort to obtain medical care but was repeatedly denied. In the early morning hours of August 22, allegedly as the result of his withdrawal symptoms, sleeplessness and uncontrollable spasms, Koukos fell from the upper bunk and sustained numerous injuries. (*Id.* ¶ 38.) He was taken to the emergency room of Chester County Hospital for treatment. (*Id.* ¶ 39.)

Koukos was discharged a few hours later with instructions to take antibiotics, apply ice to his face and receive an evaluation at Ear, Nose and Throat Associates of Chester County ("ENTACC") within two to three days. Upon his return from the hospital, he was placed in solitary confinement on the medical block where he could, ostensibly, be observed for ongoing complications. (*Id.* ¶ 43.) However, he alleges he was not actually monitored for any further post-concussion or withdrawal symptoms and that Defendants failed to provide him with the prescribed antibiotics, ice or pain medication. (*Id.* ¶¶ 42–43.)

On August 23 Koukos was seen by Medical Doe 1, who represented that he/she was a physician assistant and informed him that he would be transferred back to a regular cell without further treatment or monitoring. (*Id.* ¶ 44.) On September 8, Koukos was taken to ENTACC to be examined for ongoing pain in his right orbital area. (*Id.* ¶ 47.) He was examined by Michael Picariello, M.D. and underwent a diagnostic nasal endoscopy. (*Id.*) Koukos alleges that as a result of the delayed diagnostic testing, no further treatment was an option at that time. (*Id.*) Although he was instructed to return for a follow-up exam in one month, Defendants failed to bring him back to ENTACC for any additional examinations. (*Id.* ¶ 48.)

Koukos contends that Defendants withheld reasonable, necessary and prescribed care, failed to ensure that he received the appropriate follow-up treatment for his injuries and instead allowed him to remain in pain for approximately nine months until he was able to seek treatment after his release.  (*Id.* ¶ 49.)  He further alleges that as the result of his fall, and subsequent denial of medical care, he has suffered permanent injury: he can no longer read for more than ten minutes; experiences ongoing tenderness in his right cheekbone which disrupts sleep; suffers from chronic pain in his right hip which affects his mobility and suffers from migraines.  (*Id.* ¶ 40.)

## II.

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment.  Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  To succeed on a motion under Rule 12(c), "the movant [must] clearly establish[ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991).  When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Id.* at 56.

## III.

Koukos brings direct negligence claims against Abney, Hines, Budynkiewcz and Medical Does 1–10, alleging that they breached their respective duties to comply with generally accepted medical standards of care in their treatment of him.  (*Id.* ¶¶ 101, 103.)  He contends that opiate-dependent individuals detoxifying from opiate use due to sudden termination of usage present

4

significant medical issues and risks and, although detoxification for individuals who are otherwise healthy is not dangerous when it takes place with proper monitoring and treatment, it is known to have several dangerous and potentially fatal medical consequences for those with chronic health conditions, such as Koukos. (*Id.* ¶¶ 59–62.)  For these reasons, he contends that basic standards of correctional healthcare require that people admitted to correctional facilities who openly admit opiate use and dependence, *inter alia*, "be consistently monitored, have their vital signs assessed at regular intervals, and be administered medications designed to reduce the risk of health dangers, physical responses to withdrawal and the pain associated therewith and caused thereby."  (*Id.* ¶ 63.)

According to Koukos, the individual Defendants breached their duties to comply with generally accepted standards of medical care by failing to ensure that he would be properly monitored and treated while undergoing detoxification.  He further alleges that PrimeCare is vicariously liable for the individual Defendants' negligence under a theory of *respondeat superior*, as well as directly liable for its own corporate negligence in failing to establish and maintain policies and procedures to ensure that inmates undergoing opiate detoxification received proper monitoring and treatment.  (*Id.* ¶¶ 102, 105.)

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires an "attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" to file a certificate of merit within sixty days of the filing of the complaint.  The certificate must attest to the colorable merit of the claim by including one of the following statements: (1) that "an appropriate licensed professional" has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the

5

defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim. Pa. R. Civ. P. 1042.3(a). The rule allows for a sixty-day extension of the period for filing a certificate of merit if such a request is made before the expiration of the deadline and good cause is shown. *See* Pa. R. Civ. P. 1042.3(d).

The rule applies to *pro se* and represented plaintiffs alike and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007). Failure to file either a certificate of merit under Rule 1042.3(a) or a timely motion for extension of time under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his or her failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008); *see also Womer v. Hilliker*, 908 A.2d 269, 279–80 (Pa. 2006) (holding that a court may reconsider judgment entered for failure to comply with Rule 1042.3 if the plaintiff demonstrates a "reasonable excuse" for the noncompliance); Pa. R. Civ. P. 1042.6 (authorizing entry of *non pros* judgment if a malpractice plaintiff fails to comply with Rule 1042.3); *Walsh v. Consol. Design & Eng'g, Inc.*, No. 05-2001, 2007 WL 2844829, at *5 (E.D. Pa. Sept. 28, 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

Koukos filed his initial complaint on August 22, 2016. The sixty-day period for the filing of the certificate or a motion for extension expired on October 24, 2016. Koukos failed to file either document prior to the deadline. On October 25, PrimeCare filed its answer with affirmative defenses, giving notice of its intention to file a motion to dismiss the state negligence

6

claims if a certificate of merit was not filed within thirty days.  (ECF No. 8, ¶¶ 91–95.)  Koukos did not file a certificate of merit, a motion for extension of time or a motion seeking a finding that a certificate was unnecessary.  On December 9, PrimeCare filed a motion for partial judgment on the pleadings due to Koukos's failure to comply with Rule 1042.3.  (ECF No. 12.)  Koukos responded on December 30, contending that he was not required to file a certificate of merit because (1) he was not a voluntary patient of PrimeCare and (2) he had adequately pleaded a direct claim of corporate negligence against PrimeCare which, according to Koukos, does not require the filing of a certificate.  (ECF No. 14, at 5–9.)  On the same day, Koukos also filed an untimely motion for extension of time to file a certificate "should this Court determine they are required for any of the PrimeCare Defendants."  (ECF No. 15, at 2.)

      As an initial matter, Koukos's argument that the requirement is inapplicable because he was not a voluntary patient of, or in privity of contract with PrimeCare is meritless.  It is well established that the requirement applies to inmates who receive medical care while incarcerated.  *See, e.g.*, *Booker v. United States*, 366 F. App'x 425, 426 (3d Cir. 2010); *Perez v. Griffin*, No. 1:06-1468, 2008 WL 2383072, *3 (M.D. Pa. June 9, 2008), *aff'd.*, 304 F. App'x at 72.  Moreover, the certificate of merit requirement applies to all cases "based upon an allegation that a licensed professional deviated from an acceptable professional standard," Pa. R. Civ. P. 1042.3(a), and all medical professional negligence claims "predicated upon facts constituting medical treatment, that is, [involving] diagnosis, care and treatment by licensed professionals," *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 247 (E.D. Pa. 2008) (quoting *Smith v. Friends Hosp.*, 928 A.2d 1072, 1076 (Pa. Super. Ct. 2007)); *see also Varner v. Classic Cmtys. Corp.*, 890 A.2d 1068, 1074 (Pa. Super. Ct. 2006) (explaining that "it is the substance of the complaint rather than its form" that controls whether a claim is for professional liability and

7

whether a certificate of merit is required). "[A] complaint 'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment." *Iwanejko*, 249 F. App'x at 944 (quoting *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 323 (Pa. Super. Ct. 2007)).

Koukos's claims turn on whether Defendants met the applicable standard of care for treating opiate-dependent individuals undergoing detoxification and whether PrimeCare's policies and procedures (or lack thereof) relating to such medical care fell below the acceptable professional standards. The claims necessarily involve "questions of medical judgment." *Id.* (quoting *Ditch*, 917 A.2d at 322); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 77 n.4 (3d Cir. 2013). Koukos was thus required to file certificates of merit in support of all of his negligence claims, including his claim of corporate negligence. *See, e.g.*, *Stroud*, 546 F. Supp. at 248 ("A COM is required as to corporate negligence claims that are premised on allegations that a hospital's actions fell below the applicable medical or professional standard, *i.e.*, where the claim is predicated upon facts constituting medical treatment."); *Rostock v. Anzalone*, 904 A.2d 943, 946 (Pa. Super. Ct. 2006) (holding that the plaintiff's corporate negligence claims required a certificate of merit and expert testimony).

Koukos's failure to file a certificate of merit or a timely request for an extension is fatal to his claims unless he demonstrates a "reasonable excuse" for his omission. *See e.g.*, *Perez*, 304 F. App'x at 74. Koukos's mistaken belief that the requirement did not apply to inmates or claims of corporate negligence is insufficient. *See Stroud*, 546 F. Supp. at 245 ("[I]t is clear that the reasonable explanation or legitimate excuse must be more than a misunderstanding of the law governing the applicability of the COM requirement and its deadlines or a belief that no COM is

required as to the claims presented." (citing *Womer*, 908 A.2d at 279–80; *Yee v. Roberts*, 878 A.2d 906, 909–911 (Pa. Super. Ct. 2005); *Ditch*, 917 A.2d at 326–28)).

Koukos also contends that "additional medical records are needed to determine the identity(s) of the John Doe medical defendants and whether a certificate of merit would be required." (ECF No. 15, at 4.) The Third Circuit has already stated, however, that a prisoner's lack of access to his medical records is not a sufficient excuse for failing to file a certificate of merit. *See Baumgardner*, 535 F. App'x at 77 n.5. Koukos's allegations thus cannot serve as a reasonable excuse for his failure to comply with Rule 1042.3 and Defendants' motion for partial judgment on the pleadings will be granted in their favor on Koukos's state negligence claims. *See Perez*, 304 F. App'x at 74 (granting judgment on the pleadings where plaintiff lacked reasonable excuse for failure to comply); *see also Jackson v. Superintendent Greene SCI*, No. 16-3628, 2016 WL 7210096, at *1 (3d Cir. Dec. 13, 2016) (same).

An appropriate order follows.

                                      BY THE COURT:

                                      ***/s/ Gerald J. Pappert***
                                      GERALD J. PAPPERT, J.